**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 09-cv-02861-REB-KMT

THOMAS R. LEWIS,

    Plaintiff,

v.

TODD STRONG, in his official capacity as a Verizon Wireless employee, and in his individual capacity,
VERIZON WIRELESS 9VAW) LLC d/b/a VERIZON WIRELESS, and
ONE OR MORE JOHN DOES,

    Defendants.

## ORDER GRANTING MOTION TO DISMISS

**Blackburn, J.**

The matter before me **Defendants' Partial Motion To Dismiss Plaintiff's First Claim for Relief as to Verizon Wireless and Plaintiff's Second and Sixth Claims for Relief Pursuant to Federal Rule of Civil Procedure 12(b)(6)** [#37], filed March 30, 2010. I grant the motion.

### I. JURISDICTION

I have subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction).

### II. STANDARD OF REVIEW

When ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), I must determine whether the allegations of the complaint are sufficient to state a claim within the meaning of Fed.R.Civ.P. 8(a). I must accept all well-pleaded allegations of the

complaint as true. ***McDonald v. Kinder-Morgan, Inc.***, 287 F.3d 992, 997 (10th Cir. 2002). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." ***Fernandez-Montes v. Allied Pilots Association***, 987 F.2d 278, 284 (5th Cir. 1993); **see also *Ruiz v. McDonnell***, 299 F.3d 1173, 1181 (10th Cir. 2002) ("All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true."), ***cert. denied***, 123 S.Ct. 1908 (2003). I review the amended complaint to determine whether it "'contains enough facts to state a claim to relief that is plausible on its face.'" ***Ridge at Red Hawk, L.L.C. v. Schneider***, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting ***Bell Atlantic Corp. v. Twombly***, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." ***Id.*** (emphases in original).[1] Nevertheless, the standard

---

[1] ***Twombly*** rejected and supplanted the "no set of facts" language of ***Conley v. Gibson***, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Tenth Circuit clarified the meaning of the "plausibility" standard:

> "plausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.
>
> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."

2

remains a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." ***Dias v. City and County of Denver***, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting ***Twombly***, 127 S.Ct. at 1965) (internal quotation marks omitted).

### III. ANALYSIS

On February 13, 2009, plaintiff entered a Verizon Wireless retail store in Denver, Colorado, to purchase a new cell phone for his personal use. Plaintiff questioned Todd Strong, a Verizon employee, about the benefits to which he was entitled under his preexisting Verizon contract. Plaintiff admits that he became agitated and cursed at Strong during the course of the conversation, but denies that he engaged in any threatening or violent conduct. After approximately fifteen minutes of heated exchange, Strong demanded that plaintiff leave the store. Plaintiff inadvertently left his debit card at the store, and when he returned thirty minutes later to retrieve it, he was able to complete some unspecified "part of his business with the assistance of a different store employee." (**Amended Complaint** ¶ 26 at 5 [#34], filed March 16, 2010.)

Later that evening, Strong sent an email to plaintiff's employer, the Denver Fire Department, in which he allegedly falsely accused plaintiff of using his position with the Fire Department while attempting to transact business in the store. As a result of this complaint, plaintiff was placed on administrative leave. During the course of the subsequent investigation by the Denver Fire Department investigated the incident, local police officers were called. As a result, a city ordinance violation was issued against

---

***Robbins v. Oklahoma***, 519 F.3d 1242, 1247-48 (10th Cir. 2008) (quoting ***Twombly***, 127 S.Ct. at 1974) (internal citations and footnote omitted).

3

plaintiff, and he was arrested and jailed on that charge in March, 2009, although ultimately the charges were dismissed. Several months later, plaintiff was demoted and reassigned to another fire station, losing salary and overtime and pension benefits as a result. This lawsuit followed. Defendants have moved to dismiss plaintiff's claim under 42 U.S.C. § 1981 as against Verizon Wireless, as well as his state law breach of contract and outrageous conduct claims as against all defendants. I find their arguments well-taken, and, therefore, grant the motion.

"Section 1981 prohibits racial discrimination in 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" ***Reynolds v. School District No. 1, Denver, Colorado***, 69 F.3d 1523, 1532 (10th Cir. 1995) (quoting 42 U.S.C. § 1981). Although typically as between private actors, such claims arise in the employment context, they have been recognized in cases involving retail transactions as well. *See* ***Hampton v. Dillard Department Stores, Inc.***, 247 F.3d 1091, 1102 (10th Cir. 2001), ***cert. denied***, 122 S.Ct. 1071 (2002). To prove a claim under section 1981, plaintiff must show "(1) that [he] is a member of a protected class; (2) that the defendant had the intent to discriminate on the basis of race; and (3) that the discrimination interfered with a protected activity as defined in § 1981." ***Id.***

It is clear from the Amended Complaint that the "protected activity" on which plaintiff seeks to rely is his alleged right to "purchase a telephone and complete his business transaction." (***See* Amended Complaint** ¶ 27 at 5 & ¶ 51 at 9 [#34], filed

4

March 16, 2010.)  More specifically, plaintiff alleges that "[d]efendants[2] intentionally interfered with [his] right to make and enforce his contract with Verizon" by (1) lodging a complaint against plaintiff with his employer that falsely implied that plaintiff misused his position as an employee of the Denver Fire Department while in the store; and (2) involving themselves in the issuance of a city ordinance violation.  (*Id.* ¶¶ 52-53 at 10.)  The problem with these allegations is not so much that they fail to acknowledge that plaintiff later was able to complete at least part of his transaction, as defendants argue, or that Verizon may be held vicariously liable for the actions of its employees, as plaintiff counters,[3] but that they make absolutely no sense.

The complaint makes no allegation that plaintiff was prevented from making or enforcing any part his wireless phone service contract after the initial incident on February 13, 2009.  Yet both the complaint to the Denver Fire Department and the issuance of the city ordinance violation, the only incidents alleged in the Amended Complaint that are attributed to Verizon (*see* **Amended Complaint** ¶¶ 52-53 at 10 [#34], filed March 16, 2010; *see also supra* n. 3), post-dated that alleged interference with plaintiff's contractual rights.  (*Cf.* **Amended Complaint** ¶ 51 at 9 [#34], filed March

---

[2]  Although the Amended Complaint makes generalized, undifferentiated references to "defendants," such global allegations are insufficient to provide fair notice, as required by Fed.R.Civ.P. 8(a), that any particular defendant had actual or constructive knowledge of plaintiff's complaints. *See Robbins*, 519 F.3d at 1250.

[3]  Paragraph 51 of the Amended Complaint alleges that Strong interfered with that right by forcing plaintiff to leave the store before he could complete his transaction and does not mention, much less implicate, Verizon at all.  (*See* **Amended Complaint** ¶ 51 at 9 [#34], filed March 16, 2010.)  Moreover, I agree with defendants that the contention that Strong was motivated by an intent to further his employer's business interests – allegedly to protect Verizon's contract with the Denver Fire Department, *see Moses v. Diocese of Colorado*, 863 P.2d 310, 330 n.27 (Colo. 1993), *cert. denied*, 114 S.Ct. 2153 (1994) – appears to misread the allegations of the Amended Complaint.  (*See* **Amended Complaint** ¶39 at 7) (alleging that Strong's complaint actually caused concern that Verizon would *lose* its contract with the Fire Department and/or the city of Denver).

16, 2010.) Thus, it is not so much that "the fact pattern giving rise to [plaintiff's] [section 1981] is unusual" (Plf. Resp. at 7 [#45], filed April 19, 2010), as that the Amended Complaint does not tie the post-February 13 events alleged to have involved Verizon to the contract that forms the basis of the section 1981 claim. Accordingly, the motion to dismiss this claim as against Verizon will be granted.

For similar and other reasons, plaintiff's breach of contract claim fares no better. Plaintiff alleges that defendants breached the duty of good faith and fair dealing implied in every contract in Colorado, *see Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995), by contacting the Denver Fire Department to complain about plaintiff's conduct in the store and by involving themselves in the issuance of the city ordinance violation. Here again, there is no discernible connection between these events and earlier plaintiff's failure, *vel non*, to secure a new wireless telephone and/or phone service contract. The claim is subject to dismissal on that basis alone.

Even if the claim were logical, plaintiff still has failed to make out a viable claim for breach of contract. "The duty of good faith and fair dealing applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time. The covenant may be relied upon only when the manner of performance under a specific contract term allows for discretion on the part of either party." *Id.* The Amended Complaint utterly fails to identify any term of the contract, much less point out a discretionary term defendants allegedly breached by reporting plaintiff's behavior to his employer and/or involving themselves in the issuance of the city ordinance citation. Plaintiff therefore has failed to state a claim on which relief may be granted, and the

6

breach of contract claim should be dismissed.

Finally, plaintiff's outrageous conduct claim does not withstand scrutiny under Rule 12(b)(6), either. Although "the question of whether conduct is outrageous is generally one of fact to be determined by a jury, it is first the responsibility of a court to determine whether reasonable persons could differ on the question." ***Culpepper v. Pearl Street Building, Inc***., 877 P.2d 877, 883 (Colo. 1994). To prove a claim of outrageous conduct under Colorado law, defendants' actions must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." ***Churchey v. Adolph Coors Co.***, 759 P.2d 1336, 1350 (Colo. 1988).

A review of the apposite caselaw demonstrates that the universe of viable outrageous conduct claims is extremely limited:

> Proof of the tort of outrageous conduct must consist of either an extreme act, both in character and degree, or a pattern of conduct from which the ineluctable conclusion is the infliction of severe mental suffering was calculated or recklessly and callously inflicted. Conduct that could be illegal or that some might consider reprehensible is not necessarily actionable. ***See* Restatement (Second) of Torts** § 46, cmt. d (1965) ("It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice.").

***Preston v. Atmel Corp.***, 560 F.Supp.2d 1035, 1040 (D. Colo. 2008) (first internal citation and quotation marks omitted). ***See also Carani v. Meisner***, 2009 WL 2762719 at *3 (D. Colo. Aug. 26, 2009) (describing claim as "available in response to a very narrow type of conduct") (citation and internal quotation marks omitted); ***Harrison v.***

7

*Luse*, 760 F.Supp. 1394, 1402 (D. Colo. 1991) (same, and collecting demonstrative cases), *aff'd*, 951 F.2d 1259 (10th Cir. 1991). Indeed, the parameters of such a claim are more easily defined by what is excluded than what is included. For example, and particularly relevant here, false statements will not suffice to make out a claim, even if they affect a plaintiff's employment and/or accuse him of a crime and thus might make out a viable claim of defamation *per se*. **See, e.g.**, *Scott v. Hern*, 216 F.3d 897, 913 (10th Cir. 2000) (allegedly false statements regarding anti-abortion protestor's mental stability contained in affidavit that led to plaintiff's involuntary commitment); **Carani v. Meisner**, 2009 WL 2762719 at *4 (plaintiff who was arrested on false accusation, which also was published to plaintiff's employer); **Lindemuth v. Jefferson County School District R-1**, 765 P.2d 1057, 1059 (Colo. App. 1988) (assistant coach who was forced to resign after head coach accused him of being a child molester); **Dorr v. C.B. Johnson, Inc.**, 660 P.2d 517, 520-21 (Colo. App. 1983) (allegation that employer, *inter alia*, published false statements in accident report and made defamatory statements in connection with plaintiff's workers' compensation proceedings). Nor does the mere filing of an unfounded lawsuit necessarily constitute outrageous conduct. **See Harrison**, 760 F.Supp. at 1402; **Weiszmann v. Kirkland and Ellis**, 732 F.Supp. 1540, 1548-49 (D. Colo. 1990) (involuntary bankruptcy petition filed against plaintiff by attorneys representing his wife's employer who allegedly had knowledge of plaintiff's delicate mental health based on confidential information). Likewise, the failure to more thoroughly investigate a charge does not state a claim for outrageous conduct. **Scott**, 216 F.3d at 913.

8

Nothing in plaintiff's Amended Complaint comes close to the circumstances found insufficient to state a claim for outrageous conduct in the above-cited cases. Plaintiff's allegations that defendants made false allegations against him to his employer and wrongfully initiated the issuance of a civil ordinance violation for which he was arrested do not rise to the level of outrageousness contemplated by the caselaw interpreting Colorado law on this matter.[4] **Cf. Destefano v. Grabrian**, 763 P.2d 275, 286 (Colo. 1988) (Catholic priest, acting as marriage counselor, engaged in sexual relations with married woman who sought marriage counseling from him); **Montoya v. Bebensee**, 761 P.2d 285. 290 (Colo. App. 1988) (unlicensed psychologist, despite significant evidence to the contrary, reported that plaintiff had sexually abused his children); **DeCicco v. Trinidad Area Health Association**, 573 P.2d 559, 560-61 (Colo. App. 1977) (defendants refused ambulance service to plaintiff's critically ill wife, causing her death). For this reason, defendants' motion to dismiss plaintiff's sixth claim for relief for outrageous conduct/intentional infliction of emotional distress for failure to state a claim will be granted.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendants' Partial Motion To Dismiss Plaintiff's First Claim for Relief as to Verizon Wireless and Plaintiff's Second and Sixth Claims for Relief Pursuant to Federal Rule of Civil Procedure 12(b)(6)** [#37], filed March 30, 2010, is **GRANTED**; and

---

[4] Nor does the Amended Complaint allege "a pattern of harassment that extends over a considerable period time" or "an abuse by the actor of a position in which he has actual or apparent authority over the other" that might support an outrageous conduct claim. **Riske v. King Soopers**, 366 F.3d 1085, 1089-90 (10th Cir. 2004) (citations and internal quotation marks omitted).

2. That the following claims are **DISMISSED WITHOUT PREJUDICE** for failure to state claims on which relief may be granted:

    a. Plaintiff's First Claim for Relief, alleging a violation of 42 U.S.C. § 1981, as against defendant Verizon Wireless (VAW) LLC d/b/a Verizon Wireless only;

    b. Plaintiff's Second Claim for Relief, alleging breach of contract, as against all defendants; and

    c. Plaintiff's Sixth Claim for Relief, alleging outrageous conduct/intentional infliction of emotional distress, as against all defendants.

Dated June 2, 2010, at Denver, Colorado.

**BY THE COURT:**

/s/ Bob Blackburn
Robert E. Blackburn
United States District Judge